HELIFIX LIMITED, Plaintiff–Appellant,

v.

BLOK–LOK, LTD. and William Scott Burns, Defendants–Appellees,

v.

Helifix North America Corporation, Third–Party Counterclaim Defendant.

No. 99–1196.

United States Court of Appeals, Federal Circuit.

April 7, 2000

---

[7]. We note that validity of the '129 patent is an issue that has not yet been decided by the district court.

Before RADER, SCHALL, and GAJARSA, Circuit Judges.

SCHALL, Circuit Judge.

Helifix Limited ("Helifix") appeals the order of the United States District Court for the District of Massachusetts denying its motion to preliminarily enjoin Blok–Lok, Ltd. and William Scott Burns[1] (collectively "Blok–Lok") from inducing infringement of, and contributorily infringing, United States Patent No. 5,687,801 ("the '801 patent"). *See Helifix Ltd. v. Block–Lok, Ltd.*, 26 F.Supp.2d 294 (D.Mass. 1998) (memorandum and order). Helifix also appeals the district court's interlocutory order granting summary judgment of patent invalidity in favor of Blok–Lok on Blok–Lok's counterclaim against Helifix.[2] The district court held that the '801 patent was invalid by reason of anticipation and the on-sale bar under 35 U.S.C. § 102(b) (1994). *See Helifix Ltd. v. Block–Lok, Ltd.*, 26 F.Supp.2d 294, 52 USPQ2d 1486 (D.Mass.1998). We affirm the denial of the motion for a preliminary injunction, vacate the grant of summary judgment of patent invalidity, and remand for further proceedings.

## BACKGROUND

### I.

The '801 patent, entitled "Method of Securing Walls with a Tie," issued from an application filed on September 27, 1996. That application was a divisional of Application Serial No. 08/491,358, filed June 30, 1995, which was a continuation-in-part of Application Serial No. 08/204,465, filed February 28, 1994. The patent names Robert Ian Paterson and Brian Alan Breeze as the inventors and Helifix as the assignee. The patent is directed to a method of securing layers of masonry

Jack E. Dominik, Dominik, Knechtel, Demeur & Samlan, of Miami Lakes, Florida, argued for plaintiff-appellant.

H. Bissell Carey, III, Robinson & Cole LLP, of Boston, Massachusetts, argued for defendants-appellees.

1. William Scott Burns is the general manager of Blok–Lok, Ltd. and was named as a defendant in Helifix's complaint.

2. Blok–Lok's Lanham Act counterclaim named as a third-party defendant Helifix North America Corporation, a wholly-owned subsidiary of Helifix.

("wythes"), such as an exterior brick wall and an interior concrete wall, by means of ties. *See, e.g.,* '801 pat., claim 1. The typical tie is described as spiral-shaped, 7–8 inches long, and made of solid stainless-steel. *See id.* at col. 2, ll. 55–56, col. 4, l. 42. The sole claim of the patent recites:

1. A method of securing *(1)* two or more wythes in a building structure *(2)* utilizing a helical tie member *(3)* having longitudinal helical flutes terminating at a cutting end at one end and *(4)* terminating at a remote end opposite the cutting end comprising the steps of:

*(5)* drilling a first wythe to a diameter less than than [sic] a diameter of the flutes on the tie to be inserted,

*(6)* drilling a pilot hole in a second wythe to a predetermined depth,

*(7)* inserting the remote end of the tie into a tool which *(8)* impactingly drives the tie and *(9)* rotatably permits the same to rotate as a helical bed is developed in the first wythe due to penetration by the tie,

*(10)* passing the flutes into the second wythe and continuing to impactingly drive the tie to a base of the pilot hole,

*(11)* removing the driving tool from the remote end of the tie,

and thereafter *(12)* finishing the remote end of the tie in accordance with mandates of the site.

(The reference numerals are those added by the district court in its summary judgment order, *see Helifix,* 26 F.Supp.2d at 297, 52 USPQ2d at 1489.) The patent teaches that pursuant to this method "the tie helically grasps the interior wythe ... as well as the exterior wythe ..., and a dry fix or tieing [sic] relationship is developed." '801 pat., col. 5, ll. 34–36. The patent states that different tools can be used to drive the tie, "so long as the tie is permitted to rotate," *id.* at col. 4, l. 51, and that "[i]t is important that the tie be free to rotate in the ... [tool] to avoid creating any stress in the masonry other than that imparted by the hammering action of the tie," *id.* at col. 5, ll. 47–52.

Figure 7 of the '801 patent shows a workman **21** practicing the invention of claim 1 by driving a helical tie member **10** into a building structure to secure a first wythe **2** to a second wythe **4**:

Figure 13 of the patent shows a helical tie member **10** securing wythes **2** and **4** in a building structure:

**FIG. 13**

## II.

In January of 1993, representatives of Helifix attended the World of Concrete trade show in Las Vegas, Nevada, where they displayed and distributed a brochure ("the '93 brochure"). The '93 brochure describes Helifix stainless steel ties and their use in masonry refacing and new construction. It also describes the use of the ties in both "DryFix" and "Dry–Chemical Fix" methods of construction.[3] With regard to the ties, the '93 brochure states:

> The Helifix tie has a unique design which causes it to auger as it is installed. The tie cuts a helical groove as it corkscrews into the wall ensuring that it bonds securely with most construction materials.

With regard to the DryFix method, which is at issue in this case, the '93 brochure states:

> The DryFix technique is used to pin facing material to the backup where the cavity is minimal or non-existent. Ideal for pinning masonry facings or veneers to brick, block, or concrete. Ideal for use in multi-wythe composite walls.

The brochure explains the DryFix method with the following diagrams and descriptions:

> 1. Having determined the points of entry for the Helifix ties, a hole is drilled through the outer wythe into the backup substrate to a predetermined depth.

2. The DryFix masonry tie is loaded into the insertion tool and power driven until the outer end of the tie is recessed below the face of the brickwork.

3. In the DryFix method, the tie is secured to the wythes without chemicals. In the Dry– Chemical Fix method, a chemical resin secures the tie to the outer wythe.

3. The outer face is then finished with matching materials.

The DryFix portion of the brochure also states that "... the special augering action of the tie avoids bricks or blocks splitting...."

The last paragraph of the brochure is a "warranty" that provides as follows:

Seller makes no warranty of any kind, express or implied, except that the goods sold under this agreement shall be of the standard quality of seller, and buyer assumes all risk and liability resulting from the use of the goods, whether used singly or in combination with other goods. Seller neither assumes nor authorizes any person to assume for seller any other liability in connection with the sale or use of the goods sold, and there is no oral agreement or warranty collateral to or affecting this transaction.

The brochure also sets forth a telephone number and address to contact "for further information."

### III.

On June 4, 1998, Helifix filed suit against Blok–Lok, alleging that Blok–Lok was infringing and inducing infringement of the '801 patent, was infringing Helifix's copyrighted catalogues, and was falsely designating the sponsorship of non-Helifix products as Helifix products. Helifix sought a preliminary injunction of the activities alleged to infringe the patent and demanded a jury trial. On July 9, 1998, Blok–Lok filed a counterclaim which included a request for a declaratory judgment of patent invalidity. Blok–Lok asserted that the '93 brochure describes the method claimed in the '801 patent and that the claimed method was on sale at the January 1993 World of Concrete trade show. Because the earliest United States priority date of the '801 patent, the February 28, 1994 filing date of Application Serial No. 08/204,465, was more than one year after the brochure was publicly distributed and more than one year after the trade show, Blok–Lok asserted that the method was unpatentable under 35 U.S.C. § 102(b).

In due course, Helifix moved for summary judgment of patent infringement and Blok–Lok cross-moved for summary judg-

ment of patent invalidity. The district court denied both motions on September 14, 1998. However, after a hearing on September 15, 1998, the court invited Blok–Lok to renew its motion. Blok–Lok did so, and on November 5, 1998, the court granted the renewed motion for summary judgment in an interlocutory order. *See Helifix*, 26 F.Supp.2d at 303, 52 USPQ2d at 1494. In doing so, the court construed claim 1 of the '801 patent, focusing on the tool recited in the claim. *See id.* at 296–98, 52 USPQ2d at 1488–89. The court concluded that the claim is not limited to the specific tool described in the patent specification. *See id.* at 298, 52 USPQ2d at 1489. The court then determined that the '801 patent is anticipated by the '93 brochure under 35 U.S.C. § 102(b) and that activities at the World of Concrete trade show in January of 1993 amounted to an on-sale bar under 35 U.S.C. § 102(b). *See id.* at 298–303, 52 USPQ2d at 1490–93. The court therefore granted Blok–Lok's motion for summary judgment of patent invalidity on an interlocutory basis.[4] *See id.* at 303, 52 USPQ2d at 1494.

On December 15, 1998, the district court denied Helifix's motion to preliminarily enjoin Blok–Lok from inducing infringement of, and contributorily infringing, the '801 patent. *See Helifix*, 26 F.Supp.2d at 296. The court did so based upon its grant of summary judgment the previous month in favor of Blok–Lok:

> It would not be consistent with the court's order of November 5, 1998 . . . to grant plaintiff's motion for preliminary injunction that would prevent the defendants from infringing the '801 patent. That part of plaintiff's motion is denied.

*Id.*

Helifix appeals from the denial of its request for a preliminary injunction and the court's grant of Blok–Lok's motion for summary judgment.

4. The ruling was interlocutory because it did not dispose of all of the parties' claims. Specifically, there remained Helifix's copyright

## DISCUSSION

### I.

■ We have jurisdiction over the appeal of the denial of Helifix's request for a preliminary injunction pursuant to 28 U.S.C. § 1292(c)(1) (1994). We exercise our discretion to invoke pendent appellate jurisdiction over the interlocutory grant of summary judgment "because it is 'closely interrelated factually' to the preliminary injunction." *Gerber Garment Tech., Inc. v. Lectra Sys., Inc.*, 916 F.2d 683, 686, 16 USPQ2d 1436, 1439 (Fed.Cir.1990) (quoting *Intermedics Infusaid, Inc. v. Regents of the Univ. of Minn.*, 804 F.2d 129, 134, 231 USPQ 653, 657 (Fed.Cir.1986)); *see also Clinton v. Jones*, 520 U.S. 681, 707 n. 41, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997) (approving of the Court of Appeals' invocation of pendent appellate jurisdiction over Jones' cross-appeal because it was " 'inextricably intertwined' " with Clinton's appeal and review of the cross-appeal was " 'necessary to ensure meaningful review' " of the appeal (quoting *Swint v. Chambers County Comm'n*, 514 U.S. 35, 51, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995))). As just seen, the district court based its denial of the preliminary injunction request on its summary judgment ruling in favor of Blok–Lok. *See Helifix*, 26 F.Supp.2d at 296. Thus, the denial of the preliminary injunction and the grant of summary judgment are "inextricably intertwined."

### II.

■ We turn first to the summary judgment of patent invalidity because it formed the basis for the district court's denial of Helifix's request for a preliminary injunction. We review a grant of summary judgment *de novo*, and affirm only if, when the facts are viewed in the light most favorable to the non-moving party and all doubts are resolved in favor of the non-movant, there are no genuine issues of

and false designation of origin claims and Blok–Lok's correction of inventorship, breach of contract, and Lanham Act claims.

material fact and the moving party is entitled to judgment as a matter of law. *See Robotic Vision Sys., Inc. v. View Eng'g, Inc.,* 112 F.3d 1163, 1165, 42 USPQ2d 1619, 1621 (Fed.Cir.1997). A patent is presumed to be valid, *see* 35 U.S.C. § 282 (1994), and this presumption only can be overcome by clear and convincing evidence to the contrary. *See, e.g., WMS Gaming Inc. v. International Game Tech.,* 184 F.3d 1339, 1355, 51 USPQ2d 1385, 1396–97 (Fed.Cir.1999). To be entitled to summary judgment, therefore, Blok–Lok had to establish that there were no material facts in dispute relating to its assertion of anticipation, and it had to present clear and convincing evidence that the '93 brochure anticipates the claim of the '801 patent. Alternatively, Blok–Lok had to establish that there were no material facts in dispute relating to its assertion of the on-sale bar, and it had to present clear and convincing evidence that the invention claimed in the '801 patent was on sale at the World of Concrete trade show.

### A. *Anticipation*

■ An invention is anticipated under 35 U.S.C. § 102(b) if it "was ... described in a printed publication in this ... country ... more than one year prior to the date of application for patent in the United States." 35 U.S.C. § 102(b). The first step of an anticipation analysis is claim construction. *See Key Pharms. v. Hercon Labs. Corp.,* 161 F.3d 709, 714, 48 USPQ2d 1911, 1915 (Fed.Cir.1998). Claim construction is a question of law that we review *de novo. See Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1174 (Fed.Cir.1998) (en banc). In construing patent claims, we look to the intrinsic evidence of record— the claims, the specification, and, if in evidence, the prosecution history. *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582–83, 39 USPQ2d 1573, 1576–77 (Fed.Cir.1996). If intrinsic evidence resolves all ambiguities, extrinsic evidence is not considered. *See id.*

■ 1. The district court construed the claim of the '801 patent as not requiring the specific tool described in the patent specification, a hammer drilling machine fitted with an SDS chuck. *See Helifix,* 26 F.Supp.2d at 298, 52 USPQ2d at 1489. We see no error in that construction. The claim of the '801 patent does not limit the method to a hammer drilling machine fitted with an SDS chuck, but recites a tool into which a tie can be inserted and that "impactingly drives the tie and rotatably permits the same to rotate ...." '801 pat., claim 1. The specification itself teaches that different tools can be used "so long as the tie is permitted to rotate." *Id.* at col. 4, ll. 46–51. The prosecution history reveals that the Patent Office determined that the method could be practiced without the specific tool described in the specification, and there is no indication that Helifix challenged that determination.

■ 2. The second step in an anticipation analysis involves a comparison of the construed claim to the prior art. *See Key Pharms.,* 161 F.3d at 714, 48 USPQ2d at 1915. To be anticipating, a prior art reference must disclose "each and every limitation of the claimed invention[,] ... must be enabling[,] and [must] describe ... [the] claimed invention sufficiently to have placed it in possession of a person of ordinary skill in the field of the invention." *In re Paulsen,* 30 F.3d 1475, 1478–79, 31 USPQ2d 1671, 1673 (Fed.Cir.1994). If there is a genuine issue of material fact relevant to any one of these factors, summary judgment is not proper.

■ Helifix acknowledges that the '93 brochure was publicly distributed at the World of Concrete trade show more than one year before the earliest United States priority date for the '801 patent. It also acknowledges that the brochure teaches elements (1)—(7) and (11) and (12) of the '801 patent claim, as numbered by the district court. It argues, however, that the '93 brochure does not teach elements (8)—(10) of the claim. Specifically, it asserts that the brochure does not teach that the tool "impactingly drives the tie and

rotatably permits the same to rotate." '801 pat., claim 1.

The '93 brochure does not expressly disclose in words elements (8)-(10) of claim 1 of the '801 patent. The brochure might nevertheless be anticipating if a person of ordinary skill in the art would understand the brochure as disclosing elements (8)-(10) and if such a person could have combined the brochure's description of the invention with his own knowledge to make the claimed invention. *See In re Donohue,* 766 F.2d 531, 533, 226 USPQ 619, 621 (Fed.Cir.1985).

The district court assumed that because a person of ordinary skill in the art is deemed to be aware of all relevant prior art, *see Custom Accessories, Inc. v. Jeffrey–Allan Indus., Inc.,* 807 F.2d 955, 962, 1 USPQ2d 1196, 1201 (Fed.Cir.1986), such a person must be someone who is familiar with the pertinent literature and who is likely to attend trade shows. *See Helifix,* 26 F.Supp.2d at 299, 52 USPQ2d at 1490–91. From that, the court reasoned that a person of ordinary skill in the art of the '801 patent would be a building reinforcement crew supervisor or a person in research and development. *See id.* The court determined that such a person would realize that putting a rotational force on the tie depicted in the '93 brochure would create a hole in the masonry of the same size as the tie, and, therefore, would prevent the tie from adhering to the masonry. *See id.* at 300, 52 USPQ2d at 1491. The court therefore concluded that the '93 brochure plainly conveyed to one of ordinary skill in the art, through the chevron symbol in figure 2 of the DryFix portion of the brochure, the absence of any symbol or words describing a rotational force, and statements in the brochure about the augering action of the tie, that an impacting force, and not a rotational force, is applied to the tie. *See id.* The court thus concluded that the '93 brochure taught elements (8)—(10) of the patent claim. *See id.*

■ The district court should not have constructed the hypothetical person of or-

dinary skill in the art by determining which persons working in the field of the invention are likely to be familiar with the relevant literature. Instead, the court should have considered the educational level of the inventor; the type of problems encountered in the art; the prior art solutions to those problems; the rapidity with which innovations are made; the sophistication of the technology, and the educational level of workers in the field. *See Custom Accessories,* 807 F.2d at 962, 1 USPQ2d at 1201.

Moreover, neither Helifix nor Blok–Lok presented evidence on how a person of ordinary skill in the art would understand the '93 brochure. The only evidence of record relating to the meaning of the brochure is the testimony of Mr. Paterson, who is both an author of the brochure and an inventor of the claimed method. However, Mr. Paterson testified mainly as to what he intended to convey by the terms used in the brochure; he did not testify as to how a person of ordinary skill in the art would understand the brochure. In any event, Mr. Paterson's testimony is conflicting. On the one hand, he stated that he intended the chevrons in the figure of step two of the DryFix portion of the brochure to indicate "a hammering action." *See* Tr. of Sept. 15, 1998 Hr'g, at 120–21. He also stated, however, that the '93 brochure does not state that the tie is inserted into the wythe with an impacting action, and that "most people" assume that the tool shown in the brochure places a rotating force on the tie. *See id.* at 125–26. In short, on the record before us, there is a genuine issue of material fact as to whether the '93 brochure discloses elements (8)—(10) of the patent claim.

■ 3. "[E]ven if the claimed invention is disclosed in a printed publication, that disclosure will not suffice as prior art if it was not enabling." *Donohue,* 766 F.2d at 533, 226 USPQ at 621. Helifix argues that the '93 brochure does not enable a tool capable of practicing the method recited in the patent and that such a tool was

not available at the time of the World of Concrete trade show. In making this argument, it points to the testimony of Mr. Paterson that Helifix had a difficult time developing a tool that would be useful at worksites, *see* Tr. of Sept. 15, 1998 Hr'g, at 26–27, and that the invention still was in development at the time of the trade show, *see id.* at 304–06. In addition, Helifix presented a July 29, 1994 document that, according to Helifix, demonstrates that Blok–Lok had returned 44 tools to Helifix because they were unsatisfactory.

 We conclude, on the record before us, that Blok–Lok failed to provide clear and convincing evidence that the '93 brochure enables a person of ordinary skill in the art to practice the claimed method. In particular, Blok–Lok did not present any evidence indicating that a person of ordinary skill in the art could have made or obtained a tool capable of being used in the claimed method without an undue amount of experimentation. *See In re Sheppard,* 52 C.C.P.A. 859, 339 F.2d 238, 242, 144 USPQ 42, 45 (1964) (reversing a rejection under 35 U.S.C. § 102(b) where the asserted prior art reference did not permit someone skilled in the art to possess the claimed invention without an undue amount of experimentation).

Although the '93 brochure does not describe the tool used to perform the DryFix method, the district court determined that such a tool was enabled because the Patent Office had issued a restriction requirement between the claimed method and the specific tool described in the specification. *See Helifix,* 26 F.Supp.2d at 300–301, 52 USPQ2d at 1491–92. The Patent Office can issue a restriction requirement if it finds that two or more inventions claimed in a patent application are "independent and distinct." 35 U.S.C. § 121 (1994). A process and apparatus (tool) for its practice can be restricted if either "the process *as claimed* can be practiced by another materially different apparatus or by hand" or "the apparatus *as claimed* can be used to practice another and materially different process." Man. Pat. Examining Proc.

§ 806.05(e) (7th ed.1998). In response to a restriction requirement, an applicant must elect one invention for examination. *See* 37 C.F.R. § 1.142(a) (1999). Claims to the non-elected invention(s) are withdrawn from consideration and must be canceled before the application is allowed to issue as a patent. *See* 37 C.F.R. § 1.142(b) (1999).

The grandparent of the '801 patent, Application Serial No. 08/204,465, was filed with claim 1 to a method of securing wythes with a helical tie, claim 2 to a tool for driving a helical tie into a wall, and claims 3 and 4 to helical ties. The Patent Office issued a restriction requirement between the method, tool, and tie claims. With respect to the method and tool claims, the Patent Office asserted that the tool is not required to insert the tie. Helifix did not present any substantive arguments in response to this restriction requirement, and elected to pursue the method claim. In due course, the grandparent application was abandoned in favor of the parent application of the '801 patent, U.S. Application Serial No. 08/491,358. The parent application was filed with claim 1 to the method, claims 2 and 5–7 to the tool, and claims 3 and 4 to the helical tie. The Patent Office issued a restriction requirement along the same lines as the restriction requirement issued in the grandparent application, again asserting that the tool is not required to insert the tie. Helifix did not present any substantive arguments in response to this restriction requirement, and elected to pursue the tool claims. The '801 patent application was filed with the same claims as the parent application; however, the tool claims were canceled in a preliminary amendment, and the tie claims were canceled pursuant to a telephone conference with the examiner. Accordingly, the patent issued with only method claim 1.

Blok–Lok argued before the district court that the Patent Office's repeated assertions that the tool claimed in the patent applications is not required to insert the tie demonstrate that the '93 brochure need

not describe the tool in order to enable the claimed method. The district court interpreted the restriction requirements as reflecting the Patent Office's determinations that other tools could be devised to practice the method of the '801 patent. *See Helifix,* 26 F.Supp.2d at 300–01, 52 USPQ2d at 1491–92. Both Blok–Lok and the district court, however, have read too much into the restriction requirements in this case. The restriction requirements at issue merely reflect the Patent Office's conclusions that claim 1, by its terms, is not limited to a method using the tool recited in claim 2. Accordingly, the restriction requirements between the method claimed in the '801 patent and the specific tool described in the specification in no way bear on the enablement of a different tool. Because Blok–Lok did not present any other evidence indicating that the '93 brochure enables the claimed method, on the record before us there is not clear and convincing evidence that the '93 brochure anticipates the claim of the '801 patent.

### B. *The on-sale bar*

Under 35 U.S.C. § 102(b), a patent is invalid by reason of the on-sale bar if "the invention was ... on sale in this country ... more than one year prior to the date of application for the patent in the United States." 35 U.S.C. § 102(b). In *Pfaff v. Wells Electronics., Inc.,* 525 U.S. 55, 119 S.Ct. 304, 142 L.Ed.2d 261 (1998), the Supreme Court held that the on-sale bar applies when two conditions are met before the critical date, which in this case is February 28, 1994. First, "the product must be the subject of a commercial offer for sale." *Id.* at 66, 119 S.Ct. at 311. Second, "the invention must be ready for patenting." *Id.* at 67, 119 S.Ct. at 312. The Court explained that the second condition may be satisfied in at least two ways: "by proof of reduction to practice before the critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Id.* at 67, 119 S.Ct. at 312 (footnote omitted).

At the time the district court ruled on Blok–Lok's motion for summary judgment, the Supreme Court had not yet decided *Pfaff.* In concluding that the on-sale bar applied, the court started from the premise that the invention of the '801 patent was set forth in the '93 brochure. *See Helifix,* 26 F.Supp.2d at 302, 52 USPQ2d at 1493. Turning to the on-sale issue, the court stated that the '93 brochure provided "very strong circumstantial evidence that the 'DryFix' method was being made available for sale" in January of 1993 at the World of Concrete trade show. *Id.,* 52 USPQ2d at 1492. The court further stated that nothing in the '93 brochure indicated that the methods, tools, and apparatus described in the brochure were unavailable for sale, and it noted that a statement on the back of the brochure that "Helifix ties have been subjected to extensive testing in a wide range of materials" was an indication that the product that was the subject of the brochure was ready for sale. *Id.,* 52 USPQ2d at 1492–93. The court also noted that there was a warranty on the back of the brochure. *See id.,* 52 USPQ2d at 1493. The court reasoned that, if the brochure "did not constitute an offer to sell or at least an indication that the products and methods described were available for sale, this warranty would be very odd indeed." *Id.* Finally, the district court took note of the "admission of the Helifix employees who were present at the World of Concrete trade show that they distributed and displayed" the brochure. *Id.* Under all of these circumstances, the court concluded that Blok–Lok had made out a prima facie case that the method embodied in claim 1 of the '801 patent was on-sale for purposes of section 102(b). *See id.* at 302–03, 52 USPQ2d at 1493–94.

If, in this case, there is a genuine issue of material fact relating to either of the two *Pfaff* conditions (first, the product or method of the invention being on-sale, and second, the invention being ready for

patenting), summary judgment was not proper. We conclude that summary judgment was improper because there is a genuine issue of material fact as to whether the method claimed in the '801 patent was ready for patenting at the time of the January 1993 World of Concrete trade show.

As discussed above, there are genuine issues of material fact as to whether the '93 brochure discloses and enables each element of the method claimed in the '801 patent. Accordingly, for purposes of summary judgment, the '93 brochure cannot be relied upon as an enabling description of the invention. Moreover, in the district court, Blok–Lok failed to allege that any other item provided a description of the invention that was "sufficiently specific to enable a person skilled in the art to practice the invention." Blok–Lok's ability to prevail on the issue of whether the invention of the '801 patent was ready for patenting at the time of the trade show thus depends on its being able to establish that there are no genuine issues of material fact as to whether, at the time of the show, the method of claim 1 had been reduced to practice. This question turns on whether a tool capable of practicing the method had been developed in January of 1993. *See Robotic Vision,* 112 F.3d at 1165, 42 USPQ2d at 1624 (determining that a method that required a software program could not have been on-sale before a suitable software program had been developed even though the claims did not recite the software program).

We note first that reduction to practice of the claimed method does not require reduction to practice of the specific tool described in the '801 patent, but merely requires the development of any tool that meets the limitations recited in the claim. Thus, to establish that the method had been reduced to practice at the time of the World of Concrete trade show, Blok–Lok had to prove that Helifix had a tool into which a tie could be inserted and that would "impactingly drive the tie and rotatably permit the same to rotate as a helical bed is developed in the first wythe due to

penetration by the tie." '801 pat., claim 1. On appeal, Blok–Lok points to the deposition testimony of Mr. Sweeney to the effect that a DryFix tool was available and on sale prior to the trade show. However, Mr. Sweeney did not testify about the characteristics of the DryFix tool in question. Accordingly, this testimony does not demonstrate that the tool could meet the limitations recited in the '801 patent claim. Blok–Lok also cites letters that mention DryFix tools, but these letters similarly fail to indicate the characteristics and capabilities of the tools. Mr. Paterson testified in a deposition that there were many tools that had been called "DryFix tools" and that those tools may not have borne any resemblance to the final tool described in the patent. Thus, there is a genuine issue of material fact as to whether a tool meeting the claim limitations had been developed at the time of the trade show, and, therefore, whether the invention had been reduced to practice so that it could have been "on sale" at that time.

Because we conclude, on the record before us, that there are genuine issues of material fact with respect to the issues of anticipation and the on-sale bar, we vacate the grant of summary judgment of patent invalidity. In doing so, we do not imply that the record supports a determination that the '801 patent is valid, or that summary judgment of patent invalidity on a more fully developed record would be improper. We merely hold, that, on the record before the district court, Blok–Lok did not establish its entitlement to summary judgment.

### III.

We turn next to the denial of the preliminary injunction. To obtain the extraordinary relief of a preliminary injunction, the moving party must establish that: (1) it has a reasonable likelihood of succeeding on the merits; (2) it will suffer irreparable harm if the injunction is not granted; (3) the balance of hardships tips in its favor; and (4) an injunction would be

consistent with the public interest. *See, e.g., Nutrition 21 v. United States*, 930 F.2d 867, 869, 18 USPQ2d 1347, 1348–49 (Fed.Cir.1991). To overturn the denial of a preliminary injunction, the patentee "must show not only that one or more of the factors relied on by the district court was clearly erroneous, but also that a denial of the preliminary relief sought would amount to an abuse of discretion upon reversal of an erroneous finding." *New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 882, 23 USPQ2d 1622, 1625 (Fed.Cir.1992). Helifix has not met this burden.

■ A patent holder seeking a preliminary injunction bears the burden of establishing a likelihood of success on the merits with respect to the patent's validity. *See Nutrition 21*, 930 F.2d at 869, 18 USPQ2d at 1349. The presumption of the patent's validity created by 35 U.S.C. § 282 (1994 & Supp. III 1997) "does not relieve a patentee who moves for a preliminary injunction from carrying the normal burden of demonstrating that it will likely succeed on all disputed liability issues at trial, even when the issue concerns the patent's validity." *New England Braiding*, 970 F.2d at 882, 23 USPQ2d at 1625. If the alleged infringer raises a substantial question concerning validity, *i.e.*, asserts an invalidity defense that the patentee cannot prove "lacks substantial merit," the preliminary injunction should not issue. *Genentech, Inc. v. Novo Nordisk*, 108 F.3d 1361, 1364, 42 USPQ2d 1001, 1003 (Fed. Cir.1997).

■ The district court denied Helifix's preliminary injunction motion because it would have been inconsistent with its summary judgment of patent invalidity. *See Helifix*, 26 F.Supp.2d at 296. Having determined that the '801 patent was invalid, the district court presumably concluded that Helifix would not be able to establish a likelihood of success on the merits. The district court did not consider the issues of irreparable harm, the balance of hardships, or whether an injunction would be consistent with the public interest.

As discussed above, we conclude that the district court erred in granting Blok–Lok's motion for summary judgment. At the same time, we cannot say that, based upon the record before it, the district court abused its discretion in denying Helifix's request for a preliminary injunction. Because an alleged infringer must establish by clear and convincing evidence that a patent is invalid, Helifix has been able to show on appeal that genuine issues of material fact bar entry of summary judgment in favor of Blok–Lok. However, Helifix has not been able to establish that Blok–Lok's validity defense "lacks substantial merit."

Blok–Lok argues that the '801 patent is invalid by reason of anticipation and the on-sale bar. As noted above, Helifix acknowledges that the '93 brochure teaches elements (1)—(7) and (11) and (12) of claim 1 of the '801 patent. As far as elements (8)—(10) are concerned, the drawing of the brochure with a chevron and the equivocal testimony of Mr. Paterson make it a very open question as to whether those elements are or are not disclosed in the brochure. If they are, then claim 1 is anticipated by the brochure.

Turning to the on-sale bar question, we have vacated the district court's grant of summary judgment in favor of Blok–Lok because we have concluded that there are genuine issues of material fact relating to the second *Pfaff* condition: whether the invention of the '801 patent was ready for patenting at the time it allegedly was on sale. We have come to that conclusion based largely upon the conflicting testimony of Mr. Sweeny, on behalf of Blok–Lok, and Mr. Paterson, on behalf of Helifix. In our analysis of the on-sale bar issue, we did not discuss the first *Pfaff* condition: whether the product at issue was the subject of a commercial offer for sale. We point out at this juncture, however, that the evidence on this point can fairly be said to be very much in equipoise. On the one hand, Mr. Paterson admitted that Helifix attended the World of Concrete trade

show for "commercial purposes," Tr. of Sept. 15, 1998 Hr'g, at 130, and that the '93 brochure was distributed at the trade show to interest potential customers in purchasing the described products for use in the described methods. On the other hand, Mr. Paterson testified that the DryFix method was included in the brochure only "as a teaser," *id.* at 128, that the method "primarily promoted [at the trade show] was the dry chemical fix method," *id.* at 130, and that no price list was distributed at the trade show.

In sum, although the record before us does not support the district court's grant of summary judgment, it does raise a substantial question of patent invalidity. For that reason, we see no clear error in the finding of the district court that, in the face of Blok–Lok's challenge to the validity of the '801 patent, Helifix could not establish a likelihood of success on the merits. Under these circumstances, it was not necessary for the court to consider the remaining preliminary injunction factors. *See Reebok Int'l Ltd. v. J. Baker Inc.*, 32 F.3d 1552, 1556, 31 USPQ2d 1781, 1784 (Fed.Cir.1994) ("[A] district court may properly deny a motion for preliminary injunction simply based on the movant's failure to establish a reasonable likelihood of success on the merits."). We therefore find no abuse of discretion in the district court's denial of Helifix's request for a preliminary injunction.

## CONCLUSION

We affirm the denial of Helifix's request for a preliminary injunction, vacate the interlocutory summary judgment of patent invalidity, and remand the case for further proceedings consistent with this opinion.

*AFFIRMED–IN–PART, VACATED–IN–PART, AND REMANDED*

## COSTS

Each party shall bear its own costs.