**BALBOA INSTRUMENTS, INC.,**
Plaintiff–Appellee,

v.

**GECKO ELECTRONIQUE, INC.,**
Defendant–Appellant,

and

Blue Desert International, Inc. (doing business as Hydro–Quip) And Fiber Design International Inc. (doing business as Charisma Spas & Gazebos), Defendants.

No. 01–1313.

United States Court of Appeals, Federal Circuit.

DECIDED: March 22, 2002.

Before BRYSON, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and LINN, Circuit Judge.

PER CURIAM.

Balboa Instruments, Inc., sued Gecko Electronique, Inc., in the United States District Court for the Central District of California charging Gecko with infringement of Balboa's U.S. Patent No. 5,559,720 ("the '720 patent"). The district court granted Balboa's motion for a preliminary injunction, and Gecko has appealed. We hold that the district court did not abuse its discretion in granting preliminary injunctive relief to Balboa, and we therefore *affirm* the order of the district court.

On appeal, Gecko invites this court to review not only the district court's order granting the preliminary injunction, but also its orders granting Balboa summary judgment of infringement and denying Gecko's motion for summary judgment of invalidity, on the grounds that all three orders are "inextricably intertwined." *Helifix Ltd. v. Blok–Lok, Ltd.*, 208 F.3d 1339, 1345, 54 USPQ2d 1299, 1303 (Fed. Cir.2000). Although we agree that all three orders are based on closely related matters of claim construction regarding claims 12 and 13 of the '720 patent, we decline to review the district court's summary judgment orders at this point in the proceedings.

The grant of a preliminary injunction is within the sound discretion of the district court. *Amazon.com, Inc. v. Barnesandnoble.com*, 239 F.3d 1343, 1350, 57 USPQ2d 1747, 1751 (Fed.Cir.2001). "An abuse of discretion may be established by showing that the court made a clear error of judgment in weighing relevant factors or exercised its discretion based upon an error of law or clearly erroneous factual findings." *Id.* (quoting *Novo Nordisk of N. Am., Inc. v. Genentech, Inc.*, 77 F.3d 1364, 1367, 37 USPQ2d 1773, 1775 (Fed.Cir.1996)).

Claim 13 of the '720 patent depends from independent claim 12. Both claims are reproduced below, with the pertinent claim terms emphasized:

12. A water control system for bathing, comprising:

an open container for holding water for bathing;

a heater element for heating said water;

a temperature sensor for monitoring the temperature of the water in said container;

a control panel positioned adjacent said container for controlling the temperature of said water;

a microprocessor electrically coupled to said control panel, said microprocessor programmable by a user via said control panel to control the operation of said heater element, said microprocessor also being *capable of diagnosing failures in said water control system and providing an output signal to the control panel indicative of a source of the failures.*

13. A system as in claim 12, wherein said microprocessor comprises an *8–bit CMOS* device.

In its opinion accompanying the order granting the preliminary injunction, the district court construed the phrase "diagnosing failures in said water control system" to mean "displaying error codes when there is a failure in the water control system." The district court also construed the phrase "indicative of a source of the failures" to require that "the system be capable of displaying multiple error codes dependent on the source of the failures, such as, for example, heater not heating, pump not operating, lack of water flow, or a microcomputer failure."

As this appeal arises from the grant of a preliminary injunction, we recognize that the district court's claim construction may evolve with greater understanding of the dispute. Although we agree generally with the district court's claim construction, we suggest the following clarifications subject, of course, to the district court's plenary consideration during subsequent proceedings.

■ First, it would seem that the phrase "diagnosing failures" connotes the process of detecting the causes or symptoms of failures in the water control system. Second, the phrase "indicative of a source" connotes the ability to indicate where in the water control system the failures might be occurring. The minor differences between our claim construction and the district court's, however, are not

sufficient to convince us that the district court abused its discretion in granting a preliminary injunction. In particular, we agree with the aspect of the district court's claim construction that is most relevant to this appeal, i.e., the court's determination that the plural form of the word "failures" requires that the microprocessor be capable of diagnosing and indicating a source of more than one failure in the system.

■ Gecko's primary argument on appeal is that its accused spa controls are identical in all material respects to a prior art spa control. Under Gecko's theory, therefore, either its accused spa controls do not infringe claim 13 or claim 13 is invalid. Based on the record before us, we disagree.

The pertinent prior art device is a spa control called the SC–200, which contains an 8–bit NMOS microprocessor rather than the 8–bit CMOS microprocessor found in the Gecko spa controls. The display panel of the SC–200 has a vertical, linear arrangement of seven lights. If the spa water is "too hot," i.e., above 110°F, the top three lights of the SC–200 display panel will flash. If the spa water is "too cold," i.e., below 45°F, the bottom three lights of the SC–200 display panel will flash. The SC–200 display panel is capable of producing a third signal, referred to as the "no probe" signal, which consists of an alternating pattern of flashing by the even and odd numbered lights on the display panel. The "no probe" signal indicates a failure in the water control system, such as the disconnection of the temperature probe from the control board, or a break in the probe wire. Nonetheless, dependent claim 13 requires a microprocessor capable of diagnosing and indicating a source of *multiple* failures. Although the "too hot" and "too cold" signals displayed by the SC–200 indicate that the spa water temperature is outside a certain

temperature range, the district court found (albeit in the court's order denying Gecko's motion for summary judgment of invalidity) that a reasonable jury could conclude that the "flashing signals provided on the display panel of the SC–200 simply indicate that the water is too hot or too cold and not that a malfunction in the pump or heating element has occurred."

On the other hand, the district court found that the Gecko spa controls are capable of diagnosing and indicating the source of at least two failures in the water control system: a faulty temperature probe and a lack of water flow. First, the district court found that the "PRR" error message relates to the temperature regulation probe in the spa. In addition, the court found that the error code "FLO" may be displayed if the microprocessor has indicated that the pump should be on and the flow switch does not detect flow.

Based on the findings summarized above, the district court concluded in its preliminary injunction order that the SC–200 is not capable of diagnosing and indicating the source of multiple failures and that the accused Gecko device differed from the SC–200 prior art device in that respect. Accordingly, the court concluded that Gecko was unlikely to prevail on the issue of invalidity.

Gecko correctly observes that the "FLO" error code can be triggered by any one of several causes; the record indicates that the "FLO" error code can be triggered by (1) a wrong parameter for the circulation pump in the microprocessor's low level programming, (2) an insufficient amount of water in the spa, (3) a dirty filter, (4) an obstruction of water flow, (5) a defective pump, (6) a defective or uncalibrated pressure switch, (7) a defective cable, or (8) a defective board. For that reason, Gecko contends that the "FLO"

error code does not indicate a source of the failure in the system.

For purposes of our review of the preliminary injunction, we accept the district court's finding that the "FLO" error code is indicative of a source of a failure in the system, i.e., the lack of water flow, even though that failure could have been triggered by any one of several different malfunctions. We also accept, for purposes of the preliminary injunction proceedings, the district court's finding that a reasonable jury could conclude that the flashing signals on the display panel of the SC–200 do not indicate that a malfunction in the spa has occurred. We therefore conclude that the district court did not abuse its discretion in concluding that Gecko failed to raise a substantial question of invalidity with respect to claim 13 of the '720 patent.

In subsequent proceedings in this case, Gecko is free to press its argument that the "FLO" error code in the Gecko spa is not indicative of a source of a system failure because it does not identify the precise malfunction that caused the lack of water flow. Gecko is also free to argue in subsequent proceedings that the flashing signals that are triggered by water temperature deviations in the SC–200 diagnose and indicate a source of system failure, as those terms are used in the '720 patent. Neither the district court's finding on the preliminary injunction nor our order sustaining the court's ruling constitutes law of the case on that issue or on claim construction. *See Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981) ("findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits").

Because we sustain the district court's ruling that Gecko failed to show that the SC–200 spa was "capable of diagnosing failures ... and providing an output signal to the control panel indicative of a source," we do not address Gecko's argument regarding the CMOS limitation of claim 13 in light of the SC–200 and the 1984 CMOS Databook.

Gecko has raised several other objections to the preliminary injunction, including claims that Balboa failed to demonstrate irreparable harm and that the district court erred in finding that the balance of hardships and the public interest both weighed in Balboa's favor. Gecko's arguments are insufficient to persuade us that the district court abused its discretion in granting preliminary relief.