**Samuel GART, Plaintiff,**

v.

**LOGITECH, INC., et al., Defendant.**

**No. CV 98–05957 CBM(MCX).**

United States District Court,
C.D. California,
Western Division.

Jan. 24, 2003.

Joseph R. Re, James F. Lesniak, John B. Sganga, Jr., Vito A. Canuso, III, Jon W. Gurka, Knobbe Martens Olson & Bear, Irvine, CA, John W. Holcomb, Knobbe Martens Olson & Bear, Riverside, CA, for Plaintiff.

William B. Campbell, Stradling Yocca Carlson & Rauth, Newport Beach, CA, William L. Anthony, Jr., Eric L. Wesenberg, Heidi L. Keefe, Orrick Herrington & Sutcliffe, Menlo Park, CA, Terrence P. McMahon, McDermott Will & Emery, Menlo Park, CA, for Defendants.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY

MARSHALL, Chief Judge.

Before the Court is Defendant Logitech's Motion for Summary Judgment of Invalidity of Claim 7 of U.S. Patent No. 4,862,165. The parties appeared before the Court for oral argument on November 25, 2002. Upon consideration of the papers submitted and arguments presented, the Court DENIES the motion.

### JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1338(a).

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**I. Factual Background**

**A. The '165 Patent**

On August 29, 1989, the United States Patent Office issued U.S. Patent No. 4,862,165 (the "'165 patent") to Plaintiff Samuel Gart. The patent, entitled "Ergonomically–Shaped Hand Controller," describes a computer hand controller, such as a mouse, designed to reduce muscle fatigue. The '165 Patent provides for eight claims, but Claim 7 is the only claim at issue in the present motion for invalidity. Claim 7 describes:

7. A computer input accessory apparatus of the type upon which a hand rests for selectively activating sensors generating signals for affecting operation of the computer to which the apparatus is electronically connected, the apparatus being ergonomically shaped to minimize hand fatigue; the apparatus comprising:

**[The "Housing Requirement"]**

a housing configured to receive the anterior surface of the hand and

means for supporting said housing on an underlying surface;

**[The "Ergonomic Requirement"]**

said housing having: an arched meta-carpal-phalangeal support surface, a concave thenar pad support surface, a distal phalange support surface for the forefinger, a distal phalange support surface for the thumb and an angular medial surface for supporting the three remaining ulnar fingers in a wrapped configuration with flexion of the distal, middle and proximal phalanges of said ulnar fingers.

'165 patent, col. 8, ll. 31–47 (headings added).

## B. The Autocom

In the early 1970's, a group of graduate students at the University of Wisconsin worked with a research group to create a communication and writing device for people with cerebral palsy called the "Autocom." The Autocom consisted of a handpiece, a board of sensors with letters on it, electronics attached to the board, and a printing device. The Autocom system tracked the handpiece as it was moved around the board filled with letters. When the user stopped the handpiece over the letter he or she wanted, the board (through the underlying circuitry) would register the letter.

The first Autocom was used by a boy named Lydell Swenson and it included a handpiece made of packing foam designed to support Lydell's hand (the "Lydell Handpiece"). Lydell used his Autocom at school, was featured on a local cerebral palsy telethon with his Autocom, and was written about in grant applications and in the Wisconsin State Journal.

Between 1972 and 1974, the Autocom went through various improvements, including the creation of numerous handpieces. One subsequent handpiece was also molded to support the user's hand (the "Blue Handpiece"). On December 10, 1974, the Autocom received U.S. Patent No. 3,854,131 (the " '131 Patent"). The '131 Patent was cited as prior art in the '165 Patent. The Lydell Handpiece and the Blue Handpiece, however, were not specifically depicted in the '131 Patent. In the instant summary judgment motion for invalidity, Logitech poses the Lydell Handpiece and the Blue Handpiece (as opposed to the '131 Patent) anticipate or render obvious the '165 patent.

## II. Procedural Background

On July 23, 1998, Plaintiff filed a complaint for infringement of '165 Patent, alleging that Defendant manufactured various products embodying the patented invention. This Court granted Defendant's prior motion for summary judgment as to noninfringement on November 5, 1999, and entered judgment in favor of Defendant on November 22, 1999. On September 21, 2001, this Court filed and spread the mandate from the Federal Circuit affirming in part, vacating in part, reversing in part, and remanding.

On January 24, 2002, Defendant filed another motion for partial summary judgment. On January 25, 2002, Defendant filed the instant motion for summary judgment based on invalidity. On March 13, 2002, the Court held a status conference and ordered the motions to be heard on May 20, 2002. On April 29, 2002, Plaintiff filed an Opposition and Defendant filed a Reply on May 6, 2002. After several continuances, oral arguments were heard on November 25, 2002.

## STANDARD OF LAW FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides for summary judgment against a

party when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact* and that the moving party is *entitled to a judgment as a matter of law.*" FED. R. CIV. P. 56(c) (emphasis added). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets its initial burden, the nonmoving party must then set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence and draws all inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Svc., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987). The evidence presented by the parties must be admissible. *See* FED. R. CIV. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Pub. Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir.1979).

## DISCUSSION

### I. Plaintiff's Objections to the Declarations of Andrew Volk and Dr. Gregg Vanderheiden

If a witness renders an opinion as a lay witness, that opinion must comply with Federal Rule of Evidence 701, which states:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702.

FED. R. EVID. 701.

Plaintiff objects that the declarations of Mr. Volk and Dr. Vanderheiden constitute inadmissible expert testimony because they require that the declarants construe the terms of Claim 7—information outside of their personal knowledge—and then read those claims on the prior art. Defendant counters that Mr. Volk and Dr. Vanderheiden are not experts and that their declarations are based on their personal knowledge of the handpieces.

Dr. Vanderheiden directed the research group that designed the Autocom and he is a named inventor on the Autocom's '131 Patent. When Mr. Volk was a graduate student at the University of Wisconsin, he worked on creating the Autocom. Both men have personal knowledge of the Autocom and its handpieces. Therefore, the Court finds that Mr. Volk and Dr. Vanderheiden are permitted to testify as lay witnesses based on their personal knowledge.

By contrast, when the declarants compare the handpieces to the limitations of the '165 Patent, they provide testimony that does require specialized knowledge. This they are not permitted to do as lay witnesses. Accordingly, the left columns of the charts in Paragraph 15 of Dr. Vanderheiden's declaration and Paragraph 19 of Mr. Volk's declaration, which describe the '165 Patent are inadmissable and were not considered for this motion. Additionally, Dr. Vanderheiden's statement in

Paragraph 15 that the handpieces meet all of the limitations of Claim 7 is inadmissible.[1]

## II. Defendant's Motion for Summary Judgment of Invalidity

 A patent is presumed to be valid. *See* 35 U.S.C. § 282 (1994). "This presumption of validity places the burden of persuasion as well as the burden of going forward on the party asserting invalidity." *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.,* 908 F.2d 951, 953 (Fed. Cir.1990). When the defendant in a patent infringement action moves for summary judgment on invalidity based on anticipation or obviousness, the defendant must establish by clear and convincing evidence each element of the defense. *See WMS Gaming Inc. v. Int'l Game Tech.,* 184 F.3d 1339, 1355 (Fed.Cir.1999).

### A. Invalidity Based on Anticipation

 To be patentable an invention must be "new." *See* 35 U.S.C. § 101. The first step of an anticipation analysis is claim construction. *See Helifix, Ltd. v. Blok–Lok, Ltd.,* 208 F.3d 1339, 1346 (Fed.Cir. 2000). The second step involves a comparison of the construed claim to the prior art. *See id.* To anticipate a claim, a *single prior art* must show each and every element claimed. *See Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1378 (Fed.Cir.1986). If there is a genuine issue of material fact relevant to any one of these elements, summary judgement is not proper. *See Helifix, Ltd.,* 208 F.3d at 1346. If a prior art shows each element of a claimed invention, a patent is invalid as anticipated, if: (a) the invention was "known or used by others in this country . . . or described in a printed publication in this or a foreign country, before the inven-

tion thereof by the applicant for patent," (b) "the invention was . . . described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States," or (g) "the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it." 35 U.S.C. §§ 102(a), (b), (g).

### 1. Claim Construction

 Claim construction is a matter of law for the trial court. *See Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 116 S.Ct. 1384, 1393, 134 L.Ed.2d 577 (1996). "The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims." *Gart v. Logitech, Inc.,* 254 F.3d 1334, 1339 (2001) (quotations omitted). Claim interpretation begins with a review of the intrinsic evidence, which consists of the claim language, the written description, and the prosecution history. *See id.* "[W]hen a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim in determining either validity or infringement." *SRI Int'l v. Matsushita Elec. Corp. of Am.,* 775 F.2d 1107 (Fed.Cir. 1985). The Court may consider extrinsic evidence to enhance its understanding of the technology, however, the extrinsic evidence may not be used to contradict unambiguous claim language. *See id.*

### (a) The Housing Requirement

*(i) A housing configured to receive the anterior surface of the hand*

 The '165 Patent itself does not define "housing." The summary of the in-

---

1. Because the Court finds that Defendant has not met its initial burden of showing there is no genuine issue of material fact, the Court hereby finds Defendant's evidentiary objections to be moot.

vention contained in the '165 Patent, indicates that the housing must contain something, but the vague description is not definitive:

> Although the critical features of the invention reside in the shape of the housing, being a hand controller apparatus which is usable in conjunction with a computer or computer controlled game, the hand controller of the present invention also provides an underlying, generally planar support member for enclosing the housing and the electrical contents thereof and at least one relative movement sensor of the type previously described and which is well known in the art.

'165 Patent, col. 3, ll. 37–45. Thus, the Court must look to extrinsic evidence to construe the meaning of the word "housing."

In support of its Reply, Defendant offers excerpts from *American Heritage Dictionary* 625 (2d college ed.1982) and *Webster's II New College Dictionary* 536 (1999) for the proposition that the term "housing" means "something that covers, protects or supports."[2] Defendant notes that in Claims 1, 4, and 5 of the '165 Patent, Plaintiff referred to a "hollow housing," but in Claim 7 Plaintiff merely referred to a "housing." Defendant argues, the word "hollow" cannot be read into Claim 7—as this would make the inclusion of the word "hollow" in the other claims meaningless. Therefore, Defendant contends the Housing Requirement should be construed to mean a solid structure that supports the palm-side of a user's hand.

Plaintiff offers *Webster's New World Dictionary* 655 (3rd ed.1988) for the proposition that in the context of mechanical devices the term "housing" means "a frame, box, etc. for containing some part, mechanism, etc." Plaintiff argues that, by

definition, a "housing" must "house" something.

The Court finds that the summary of the invention in the '165 patent and Plaintiff's dictionary definition of "housing," comport with the plain meaning of the word "housing." Therefore, the Court construe the phrase "a housing configured to receive the anterior surface of the hand" to mean a hand controller (which may be hollow or solid) that contains a part or mechanism while receiving the palm-side of the user's hand.

*(ii) A means for supporting said housing on an underlying surface*

 To construe a "means-plus-function" clause, the Court must first identify the specified function and then consult the patent's specification to determine the structure corresponding to that function. *See Sage Prods. v. Devon Indus., Inc.*, 126 F.3d 1420, 1428.

 Here, the specified function is to support the housing on an underlying surface. The specification in the '165 Patent states that "the hand controller 10 of the present invention also provides a planar supporting surface 28 which encloses the housing 11 and which may be secured to the other components of the hand controller 10 by means of a plurality of threaded holes 36 and screws (not shown)." '165 Patent, col. 6, ll. 1–6. Even though the term "enclose" appears in the specification, it is not a limitation of Claim 7 and cannot be read into the Claim. *See Gart*, 254 F.3d at 1343 (finding it improper read a limitation appearing in the specification and the drawings into the unambiguous language of the claim). Thus, the Court construes the phrase "a means for supporting said housing on an underlying surface" based on the intrinsic evidence to

---

2. Defendant's Memorandum in Support of Its Motion for Summary Judgment of Invalidity contains no discussion of the "housing" requirement whatsoever.

merely require a bottom surface for supporting the housing on an underlying flat surface.

Therefore, based on the evidence presented, the Court construes the Housing Requirement of Claim 7 to cover a solid or hollow hand controller which contains a part or mechanism while receiving the palm-side of the user's hand and a bottom surface for supporting the controller on an underlying flat surface.

### (b) The Ergonomic Requirement

■ In *Gart v. Logitech, Inc.*, 254 F.3d 1334 (Fed.Cir.2001), the Federal Circuit reviewed this Court's construction of Claim 7's Ergonomic Requirement and vacated the Court's prior grant of summary judgment for noninfringement. The Fed-eral Circuit explicitly found that the Court erred in construing the "angular medial surface" of Claim 7 to include a "ledge." *Id.* at 1337. The Federal Circuit construed the phrase "an angular medial surface for supporting the three remaining ulnar fingers in a wrapped configuration with flexion of the distal, middle, and proximal phalanges of said ulnar fingers" to require "an angled surface that supports the middle, ring, and small fingers in a folded position such that the distal, middle and proximal bones of the fingers are partially bent over that angled surface." *Id.* at 1343.

Based on the Court's prior construction of the "Ergonomic Requirement" and the Federal Circuit's opinion in *Gart v. Logitech*, the Court construes the "Ergonomic Requirement" as follows:

| CLAIM | COURT'S CLAIM CONSTRUCTION |
|---|---|
| said housing having an arched metacarpal-phalangeal support surface, | "a[n] [arched] support surface for the palm area of the user's hand" |
| a concave thenar pad support surface, | "a [concave] support surface for the . . . the thumb pad" |
| a distal phalange support surface for the forefinger, | "a support surface for the forefinger that allows the forefinger to be in a bent position" |
| a distal phalange support surface for the thumb, | "a support surface for the thumb" |
| and an angular medial surface for supporting the three remaining ulnar fingers in a wrapped configuration with flexion of the distal, middle and proximal phalanges of said ulnar fingers. | ***Federal Circuit Construction;*** "an angled surface that supports the middle, ring, and small fingers in a folded position such that the distal, middle, and proximal bones of the fingers are partially bent over that angled surface" |

### 2. Comparing the Lydell Handpiece and the Blue Handpiece to the '165 Patent.

#### (a) The Housing Requirement

■ Defendant makes two arguments to support its contention that the Lydell Handpiece and the Blue Handpiece are comprised of "housing[s]." (1) Defendant argues that the Lydell Handpiece and the Blue Handpiece are solid structures that support the palm-side of the user's hand—the handpieces "house" the user's hand; and (2) Defendant argues that the Lydell Handpiece houses a piece of wood for mounting the foam handpiece on to a piece of plexiglass.

Plaintiff simply argues that the handpieces do not contain any parts or mechanisms and thus they are not "housings."

Defendant's initial argument that the handpieces "house" the user's hand is erroneous. Defendant has only offered the conclusory declarations of Mr. Volk and Dr. Vanderheiden to support this position. This interpretation would mean that a chair would be a housing for one's body, and a steering wheel would be a housing for one's hand. This stretches the ordinary meaning of a "housing" and does not comport with the Court's determination that a "housing" must contain something.

Defendant's second argument, that the foam houses a piece of wood for mounting the handpiece on a piece of plexiglass, also is lacking. Defendant offers an excerpt from Dr. Vanderheiden's deposition, where he states that the foam of the Lydell Handpiece enclosed and covered a piece of wood for mounting the handpiece on a piece of plexiglass.[3] Dr. Vanderheiden explains that the wood was necessary to the structure of the Lydell Handpiece because the foam could not be directly attached to the plexiglass. However, in another part of Dr. Vanderheiden's deposition, when asked how the foam was attached to the wood he states: "That I don't know. That I don't remember." (Wickstrom Decl., Ex. C (Vanderheiden Depo. at 121:3-5)). At best, two inferences may be drawn from the evidence offered by Defendant: (1) the foam housed wood for mounting the handpiece on the plexiglass; or (2) the handpiece was constructed of foam and wood; the wood was an integral part of the handpiece's structure, and not a part housed by the handpiece. While the former infer-

ence would satisfy the "housing" element of Claim 7, the latter inference would not.[4]

Given the strong presumption of patent validity, and the requirement that this Court draw all inferences in the light most favorable to the nonmoving party—the Court finds that Defendant has not met its burden of showing by clear and convincing evidence that either the Lydell Handpiece or the Blue Handpiece are comprised of "a housing configured to receive the anterior surface of the hand." contain each element of Claim 7. Therefore, the Court **DENIES** Defendant's motion for summary judgment of invalidity based on anticipation.

### (b) Claim 7's Ergonomic Requirement

In support of its contention that the Lydell Handpiece and the Blue Handpiece meet all of Claim 7's Ergonomic Requirement, Defendant offers: (1) the declarations and depositions of Dr. Vanderheiden and Mr. Volk; (2) photographs of the handpieces attached as exhibits to the declarations submitted; and (3) articles, grant applications and other documentary evidence.

Plaintiff argues that this evidence does not rise to the clear and convincing standard required to invalidate a patent. First, he argues that the declarations and depositions of Dr. Vanderheiden and Mr. Volk contain mere conclusions that the handpieces meet each limitation of Claim 7. *See Phillips Petroleum Co. v. Huntsman Polymers Corp.*, 157 F.3d 866, 876 (Fed.Cir.1998) (finding wholly conclusory

---

3. Following is the relevant excerpt from Dr. Vanderheiden's deposition:

 Q: How would you describe the handpiece that Lydell used with this first Autocom?

 A It was a flat piece of Plexiglass which allowed you to both stabilize the hand and provide friction, a low friction surface or a sliding surface, a mounting block with which—it was like foam and with wood inserts, so that you had, be-

cause you can't you know, mount the foam directly on it, so you would make an assembly before.

(Wickstrom Decl., Ex. C (Vanderheiden Depo. at 24:16-24)).

4. Defendant has not offered similar evidence suggesting the Blue Handpiece housed anything other than the user's hand.

expert declarations insufficient to raise a factual dispute). Second, he argues the photographs offered as evidence are not clear enough to show whether the handpieces contain the claim limitations. *See Woodland Trust v. Flowertree Nursery, Inc.,* 148 F.3d 1368, 1373 (Fed.Cir.1998) (finding photographs did not support claim for invalidity due to "their lack of detail and clarity"). Finally, Plaintiff contends that none of the documentary evidence describes the surfaces of the Lydell Handpiece or the Blue Handpiece.

The '165 Patent requires that the support surface for the thumb pad be concave. Both Mr. Volk and Dr. Vanderheiden state that the handpieces have concave thenar pad support surfaces, but these are mere conclusions. The photographic evidence and the video excerpts are not probative of this issue either; the images are all either too blurry to discern the contours of the thumb pad support surface, or Lydell's hand is covering the surface.

The Court finds that the declarants' conclusory statements alone do not provide clear and convincing evidence of a concave thenar pad support surface. Therefore, as an independent basis for denying the motion, the Court finds there is a genuine issue of material fact as to whether the Lydell Handpiece and/or the Blue Handpiece possess a concave support surface for the thenar pad.[5]

### B. Invalidity Based on Obviousness

■ A claimed invention is unpatentable if the differences between it and the prior art "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a)(1994). The determination

of whether an invention is obvious or is not obvious is a legal conclusion based on underlying factual inquiries including: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of nonobviousness. *See Graham v. John Deere Co.,* 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); *WMS Gaming Inc. v. Int'l Game Tech.,* 184 F.3d 1339, 1355 (Fed.Cir.1999).

■ Defendant initially neglected to address the *Graham* factors, and merely stated that the handpieces alone and in combination with the descriptions of the handpiece in the '131 patent render the '165 Patent obvious. This is insufficient. To show that the it was obvious to adapt the Autocom to the computer age, in its Reply brief, Defendant states that the Autocom was successful and offers: (1) excerpts from the deposition of Mr. Volk discussing the Autocom having an output similar to a computer's, and (2) a letter attached to the deposition of Dr. Vanderheiden envisioning the Autocom having microprocessors.

Defendant's evidence relates to the Autocom itself, and not to the Lydell Handpiece or the Blue Handpiece. Defendant has offered no evidence that it was obvious to modify these particular handpieces to embody each element of Claim 7. Additionally, Dr. Vanderheiden stated that over forty Autocoms were invented, and Defendant has not identified one that included a handpiece embodying the Housing Requirement.

Therefore, considering the admissible evidence, the presumption that the '165 Patent is valid, and Defendant's burden of

---

**5.** Because the Court finds that neither the Lydell Handpiece nor the Blue Handpiece embody each element of Claim 7 of the '165 Patent, the Court does not reach the issues of whether the '165 Patent is invalid as anticipated under the statutory bar of section 102(a) & (g) or the loss of right provision of section 102(b).

proving invalidity by clear and convincing evidence, the Court finds that Defendant has not met its burden of showing that the '165 Patent is invalid because it was obvious. Therefore, the Court **DENIES** Defendants motion for invalidity on the basis of obviousness.

## CONCLUSION

The Court **DENIES** Defendant Logitech's Motion for Summary Judgment for Invalidity.

IT IS SO ORDERED