PERGO, INC., et al., Plaintiffs,

v.

FAUS GROUP, INC. et al., Defendants.

No. CIV.A. 5:05–CV–50FL(1).

United States District Court,
E.D. North Carolina,
Western Division.

Nov. 7, 2005.

have responded to the motion, and plaintiffs have replied. In this posture the matter is ripe for ruling. For the reasons stated below, plaintiffs' motion for preliminary injunction is denied.

## STATEMENT OF THE CASE

Plaintiffs initiated this case by complaint filed January 24, 2005, alleging claims of patent and copyright infringement. Specifically, plaintiffs allege that defendants' FasTrim floor molding product infringes upon U.S. Patents No. 6,517,935 (hereinafter the '935 patent) and 6,805,951 (hereinafter the '951 patent). Plaintiffs were granted these patents in conjunction with the development of their Simple Solutions Four–in–One floor molding product. Plaintiffs also claim that the packaging for defendants' FasTrim product infringes the copyrighted material of plaintiffs' Four–in–One product. On March 1, 2005, plaintiffs filed an amended complaint, adding a claim for infringement of U.S. Patent No. 6,860,-074 (hereinafter the '074 patent).

Plaintiffs filed the instant motion for preliminary injunction on May 5, 2005, seeking an order prohibiting defendants or any of their officers, servants, employees or agents from making, using, selling, or offering the FasTrim Floor molding product within the United States. In support of the motion, plaintiffs submitted declarations of Bengdt Lundgren, Vice President of Business Development and Product Development for plaintiff Pergo, Inc. (DE # 13); Eugene Rzucidlo, a patent attorney and former Examiner–in–Chief and member of the Board of Patent Appeals and Interferences at the United States Patent and Trademark Office (hereinafter "the PTO") (DE # 14); Robin Shmulsky, an associate professor and researcher in the Forest Products Department of Mississippi State University (DE # 15); and Eric Robins, a patent attorney (DE # 16).

Hayden J. Silver, III, W. Swain Wood, Kilpatrick Stockton, LLP, Raleigh, NC, for Pergo, Inc., Pergo (Europe) AB, Plaintiffs.

Lee M. Whitman, Wyrick, Robbins, Yates & Ponton, LLP, Raleigh, NC, for Faus Group, Inc., Industrias Auxiliares Faus S.L., Defendants.

## ORDER

FLANAGAN, Chief Judge.

This case comes before the court on plaintiffs' motion for preliminary injunction (DE # 9), filed May 5, 2005. Defendants

Plaintiffs also filed a motion (DE # 11), seeking to submit portions of Bengdt Lundgren's declaration and portions of the memorandum in support of preliminary injunction under seal.

The court, by order entered May 23, 2005, denied without prejudice plaintiffs' motion to file documents under seal, and directed the parties to submit a proposed consent protective order after consideration of the court's standard procedures where discovery may be governed by a protective order. The parties subsequently submitted a stipulation and agreed protective order, which was adopted by the court and entered on June 13, 2005. Also on that date, the court entered an order granting the parties' joint motion for limited expedited discovery (DE # 22) and setting a briefing schedule for the motion for preliminary injunction. On June 22, 2005, the court entered a separate Case Management Order, which reiterated that the deadline for briefing on the motion for preliminary injunction would conclude July 25, 2005, inviting briefing on the utility of a hearing on the motion for preliminary injunction, and directing the parties to submit proposed findings of fact and conclusions of law on the issue of preliminary injunction.

By order entered August 9, 2005, the undersigned set this matter for a tutorial presentation on plaintiffs' and defendants' competing products and the '074 patent, and for hearing on the motion for preliminary injunction. After several telephonic conferences with parties with regards to scheduling issues and discovery disputes, and a change of date necessitated by hurricane Ophelia, the tutorial and hearing took place on September 23, 2005. During the course of the hearing, information was presented to the court indicating that the '074 patent, on which the instant motion for preliminary injunction is based, is now being reexamined by the PTO. The court directed the parties to brief the issue of reexamination and what effect, if any, this has on the presumption of validity of the patent and the analysis for likelihood of success on the merits.

## STATEMENT OF THE FACTS

Plaintiffs Pergo, Inc., and Pergo (Europe) AB (hereinafter collectively "Pergo") develop, manufacture and distribute laminate flooring and associated products. In the materials submitted at the hearing on the instant motion, plaintiffs assert that in early 2003, Pergo first featured their Simple Solutions Four–in–One transition molding product at a flooring trade show. The Four–in–One product combines multiple elements to allow consumers to assemble different transition molding profiles from a single system. For example, a consumer is able to assemble separate elements to form carpet reducer molding, used to transition between laminate wood flooring and carpet. Alternatively, a consumer can assemble stair nose molding, to form a cap between the horizontal and vertical surfaces of a stair tread, using different elements from the same product. Pergo began marketing the Four–in–One product later in 2003, primarily through the Lowes chain of home improvement stores.

The design of the Four–in–One product is protect by the '935, '951, and '074 patents, and plaintiffs' amended complaint alleges infringement of all three patents, as well as copyright infringement. However, plaintiffs' argument in support of a preliminary injunction is based solely on the '074 patent, and only this patent will be discussed in this order.

The '074 patent (also referred to as the "Stanchfield" patent, for the inventor, Oliver Stanchfield), was issued on March 1, 2005. To correct certain clerical errors, the United States Patent and Trademark

Office (hereinafter the "PTO") issued a Certificate of Correction on April 26, 2005. The '074 patent is the culmination of U.S. Patent Application No. 10/347,489, filed January 21, 2003. The '489 application is a continuation-in-part of U.S. Patent Application no. 09/986,414, filed November 8, 2001. Plaintiffs argue, in support of the instant motion, that they are able to show a strong likelihood that defendants have literally infringed claims 6, 8, 9, 10, and 12 of the '074 patent. However, of these claims, only claims 6 and 12 are independent; the others are dependent on claims 6 and 12. Therefore, for the sake of brevity, only claims 6 and 12 of the '074 patent will be discussed.

Claim 6 of the '074 patent describes:

[a] joint cover assembly for covering a gap between two floor elements, the floor elements for covering a sub-surface, comprising:

 a foot configured to be positioned within the gap;

 a first member generally perpendicular to the foot;

 a second member extending generally perpendicular to the foot, at least one of the first and second members having a generally planar undersurface;

 a securing element, to connect the molding to the subsurface and to be positioned within the gap;

 an attachment to be positioned between one of the first and second members and a floor element,

 wherein the attachment and the undersurface of one of the first and second member engage through a tongue-and-groove joint, wherein the groove in in the shape of a large base distal the under surface of a respective arm, and the foot engages the securing element in order to retain the molding over the gap

when the assembly is in an installed condition.

Figure 17 of the design specifications of the '074 patent, which shows an enactment of claim 6, depicts a generally T-shaped molding, with the base of the T forming the foot, and one arm of the T forming the second member, to which an additional molding element is attached to form the carpet reducer, stair nose, or other transitional molding. In Figure 17, the basic molding and the attachment are connected through a tongue-and-groove joint, with a dovetail-shaped tongue protruding from the underside of the second member and a groove located in the attachment.

Claim 12 describes:

[a]n assembly comprising:

 a first molding comprising:

 a foot;

 a first member generally perpendicular to the foot; and

 a second member extending generally perpendicular to the foot, at least one of the first member and the second member having a generally planar under surface;

 said foot defining a groove in a sidewall thereof;

 a securing element, connecting the first molding element to the subsurface and positioned within a gap; and

 an attachment, comprising a protrusion sized and shaped to fit in said groove in said foot;

 wherein said foot engages the securing element in order to retain the molding over the gap when the assembly is in an installed condition.

Figure 18, which shows an enactment of claim 12, again depicts a T-shaped basic molding, to which another molding element is attached. The two elements are again

joined through a tongue-and-groove joint; however, in this enactment, the tongue protrudes from the attachment and fits into a groove in the side of the foot of the T-shaped basic molding.

. Defendants Faus Group, Inc., and Industrias Auxiliares Faus S.L. (hereinafter collectively "Faus") are also developers, manufacturers, and distributors of laminate flooring and associated products, and are direct and fierce competitors of plaintiffs. Defendants introduced, in June of 2004, their FasTrim transition molding product, which also allows consumers to assemble different transition molding profiles by combining different elements of the FasTrim system. Defendants' product is manufactured in Spain and marketed in the United States through the Home Depot chain. As with plaintiffs' Four–in–One system of molding, defendants' FasTrim molding is designed and manufactured to coordinate in color and design with defendants' laminate wood flooring.

On June 24, 2005, defendants filed a request for reexamination of the '074 patent with the PTO, challenging the validity of the patent. On September 12, 2005, the PTO issued an order granting the request, ruling that a substantial new question of patentability affecting claims 1–12 of the '074 patent was raised by the request for reexamination.

## COURT'S DISCUSSION

### I. Standard of Review

■ The grant or denial of a motion for preliminary injunction in the context of patent infringement litigation is in the discretion of the district court. *See* 35 U.S.C.

§ 283. In order to obtain an injunction, the moving party "must establish a right thereto in light of four factors: (1) reasonable likelihood of success on the merits; (2) irreparable harm; (3) the balance of hardships tipping in its favor; and (4) the impact of the injunction on the public's interest." *Hybritech, Inc. v. Abbott Laboratories,* 849 F.2d 1446, 1451 (Fed.Cir. 1988).[1] "These factors, taken individually, are not dispositive; rather, the district court must weigh and measure each factor against the other factors and against the form of the relief requested." *Id.* Although no single factor is dispositive as to the issuance of a preliminary injunction, "a movant cannot be granted a preliminary injunction unless it establishes *both* of the first two factors, *i.e.,* likelihood of success on the merits and irreparable harm." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.,* 239 F.3d 1343, 1350 (Fed.Cir.2001) (emphasis in original).

In order to establish a likelihood of success on the merits, plaintiffs must show, in light of the presumptions and burdens that will inhere at trial, that (1) they will likely prove that defendants have infringed the '074 patent, and (2) their infringement claim will likely survive any challenges by defendants to the validity and enforceability of the '074 patent. *See Genentech, Inc. v. Novo Nordisk,* 108 F.3d 1361, 1364 (Fed.Cir.1997).

■ Infringement, in turn, entails a two-step analysis. First, the court must determine the meaning and scope of the patent claims asserted to be infringed. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed.Cir.1995). This

---

1. Because the issuance of a preliminary injunction in a patent infringement case "involves substantive matters unique to patent law," *Hybritech,* 849 F.2d at 1451 fn. 12, Federal Circuit law, rather than regional circuit law, controls. Purely procedural matters, such as whether the district court complied with the requirement under Fed. R.Civ.P. 52(a) that the issuing court find the facts specially and separately state its conclusions of law, are controlled by the law of the regional circuit. *See id.*

first step is commonly called claims construction. *Id.* Second, the asserted infringed claim "as properly construed must be compared to the accused device or process." *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1302 (Fed.Cir.1997).

 Claims construction is a question of law. *See Markman*, 52 F.3d at 983–84. In interpreting the claims of the patent, the court looks first to intrinsic evidence, *i.e.*, the language of the patent itself and, if it is in evidence, the prosecution history of the patent. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir. 1996). "The prosecution history... consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent. Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed.Cir.2005). "In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In such circumstances, it is improper to rely on extrinsic evidence." *Vitronics*, 90 F.3d at 1583.

 Although the court on motion for preliminary injunction must assess the likelihood of plaintiff proving infringement, the court has no obligation to interpret the patent claims "conclusively and finally during a preliminary injunction proceeding." *Sofamor Danek Group, Inc. v. DePuy–Motech, Inc.*, 74 F.3d 1216, 1221 (Fed.Cir. 1996). Instead, the court may make the determination of likelihood of success on the merits based on a tentative claims construction and "exercise its discretion to interpret the claims at a time when the parties have presented a full picture of the claimed invention and prior art." *Id.; see also International Communication Materials v. Ricoh Co.*, 108 F.3d 316, 318–19 (Fed.Cir.1997) (affirming district court's denial of preliminary injunction and holding that proper role of appellate court was to allow the district court and the parties the opportunity to completely and conclusively interpret the patent claims); *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1345 n. 3 (holding that a district court can issue "tentative" or "rolling" claim constructions when "faced with construing highly technical claim language on an expedited basis, such as in a preliminary injunction proceeding.") (internal quotations omitted).

 In the second step of the infringement analysis, the properly construed patent claims are compared to the allegedly infringing product. In order to show infringement, plaintiffs must show that each element of the patent claims is present in the accused device either literally or under the doctrine of equivalents. *See Catalina Marketing Int'l v. Coolsavings.com*, 289 F.3d 801, 812 (Fed.Cir.2002). "To establish literal infringement, all of the elements of the claim, as correctly construed, must be present in the accused system." *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1361 (Fed.Cir.2002). In order to establish infringement under the doctrine of equivalents, plaintiffs must show that any differences between the accused product and the patent claims are insubstantial. *See Mas–Hamilton Group v. LaGard Inc.*, 156 F.3d 1206, 1212 (Fed. Cir.1998). "Insubstantiality may be determined by whether the accused device performs substantially the same function in substantially the same way to obtain the same result" as in the patent claim. *See Catalina*, 289 F.3d at 813 (internal quotations omitted).

 As stated above, in order to show a likelihood of success on the merits, plaintiffs must not only show a likelihood of proving infringement of the '074 patent,

but must also show that their infringement claim will likely survive any challenges by defendants to the validity and enforceability of the '074 patent. A patent shall be presumed valid, and each claim of the patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims. 35 U.S.C. § 282. An allegedly infringing party asserting the defense of invalidity bears the burden of proving the patent invalid by clear and convincing evidence. *See Bausch & Lomb, Inc. v. Barnes–Hind/Hydrocurve, Inc.*, 796 F.2d 443, 446 (Fed.Cir.1986). "However, the presumption does not relieve a patentee who moves for a preliminary injunction from carrying the normal burden of demonstrating that it will likely succeed on all disputed liability issues at trial, even when the issue concerns the patent's validity." *New England Braiding Co., Inc. v. A.W. Chesterton Co.*, 970 F.2d 878, 882 (Fed.Cir. 1992). "[A]t the preliminary injunction stage, because of the extraordinary nature of the relief, the *patentee* carries the burden of showing likelihood of success on the merits with respect to the patent's validity, enforceability, and infringement." *Nutrition 21 v. Thorne Research, Inc.*, 930 F.2d 867, 869 (Fed.Cir.1991) (emphasis in original). Therefore, if defendants raise a substantial question concerning validity, enforceability, or infringement of the patents at issue in this case, the motion for preliminary injunction should be denied. *See Genentech*, 108 F.3d at 1364.

Conversely, if plaintiffs make a clear showing of validity and infringement, they are entitled to a rebuttable presumption of irreparable harm. *See Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1363 (Fed.Cir.2001). "Because the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole." *Hybritech*, 849 F.2d at 1456. There is, however, no "presumption that money damages will be inadequate" in connection with a motion for preliminary injunction. *See Nutrition 21*, 930 F.2d at 872. If plaintiffs succeed in raising the presumption of irreparable harm by a clear showing of validity and infringement, defendants may seek to rebut the presumption by bringing forward evidence that irreparable harm would not in fact be suffered if the motion for preliminary injunction was denied. *See Roper Corp. v. Litton Systems, Inc.*, 757 F.2d 1266, 1272 (Fed.Cir.1985). Circumstances that courts have considered in rebutting the presumption of irreparable harm include the relative position of the patentee and alleged infringer in the marketplace, the patentee's licensing or practice of the patent, the availability of money damages, and the nature of the market for the patented device. *See, e.g., Rosemount, Inc. v. United States Internat'l Trade Comm.*, 910 F.2d 819, 821 (Fed.Cir.1990) (approving Commission's consideration of plaintiff's delay in bringing the infringement action, plaintiff's grant of licenses, plaintiff's large market share compared to defendant, and the availability of a damages remedy); *High Tech Medical Instrumentation v. New Image Indus.*, 49 F.3d 1551, 1557 (Fed.Cir.1995)("The availability of damages is particularly significant when... the patentee can point to no specific interest that needs protection through interim equitable relief."); *cf. Hybritech*, 849 F.2d at 1456 (listing factors the court considered in determining irreparable harm).

II. Analysis

A. Likelihood of success on the merits

As an initial matter, this court takes up defendants' challenge to the validity of

the '074 patent. Defendants requested that the PTO reexamine the '074 patent to determine if the claims of the patent were valid in light of prior art. The PTO granted the request for reexamination, noting specifically that consideration of the prior Kornfalt patent raises a substantial new question of patentablity as to claims 6 and 10 of the Stanchfield patent, and that consideration of the prior Sondermann patent raises a substantial new question of patentability as to claim 12 of the Stanchfield patent.

The parties are in vehement opposition as to what weight, if any, this court should grant the PTO's grant of the request for reexamination. Defendants argue that the fact of the PTO's grant of the request for reexamination alone precludes this court from finding that plaintiffs have satisfied their burden of showing a likelihood of success on the merits. Defendants point to the *Standard Havens* line of cases in support of this argument. In *Standard Havens Products, Inc., v. Gencor Industries, Inc.*, 897 F.2d 511 (Fed.Cir.1990), the Federal Circuit considered the issue of whether an alleged infringer was entitled to stay, pending appeal, of the district court's imposition of a permanent injunction. The court determined that the proper standard of review was "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 512. The court determined, based at least in part on the order granting reexamination of the patent at issue, that the alleged infringer had raised a substantial legal question regarding the validity of the patent. *See id.* at 514 ("The interpretation in the Commissioner's letter ordering reexamination... at the very

least raises a substantial question [of validity].") The Federal Circuit subsequently held that a decision of the district court denying a motion to stay the permanent injunction pending a final decision on reexamination was legal error. *See Standard Havens Products, Inc. v. Gencor Industries, Inc.*, 1993 WL 172432 at *1 (Fed.Cir. 1993). The Federal Circuit noted that if the decision of the PTO on reexamination that the patent was invalid was upheld on appeal and became final, the injunction would immediately become inoperative. *Id.*

Plaintiffs, in turn, argue that neither of the *Standard Havens* cases was determined in the context of a preliminary injunction. Plaintiffs point as well to the fact that in the *Standard Havens* cases, the proceedings on reexamination had gone much further than merely the grant of the motion for reexamination, to the point in the second *Standard Havens* case that the PTO had ruled the patent invalid, the patent holder had exhausted his administrative appeals, and the ruling of the PTO was on appeal to the district court. Plaintiffs argue instead that the grant of a request for reexamination does not establish a likelihood of patent invalidity. *See Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1584 (Fed.Cir.1996). In *Hoechst*, the Federal Circuit held the grant of a request for reexamination by the PTO was not sufficiently probative of invalidity to support overturning a jury verdict that the accused infringer had willfully infringed a valid patent. *See id.* Like *Standard Havens*, *Hoechst* was not decided in the context of a motion for preliminary injunction.

█ This court notes, however, that the standard of review used by the Federal Circuit in issuing a stay of a permanent injunction is effectively the same standard

used by this court to determine if a preliminary injunction should issue. *See Standard Havens*, 897 F.2d at 512. The undersigned concludes that while the grant of a motion for reexamination is not conclusive as to the issue of validity, it is probative to the issue of whether defendants have raised a substantial question of validity.

■ In their challenge to the validity of claim 6 of the '074 patent, defendants point to U.S. Patent No. 6,745,534 (hereinafter the "Kornfalt patent"). Figure 1(a) of the Kornfalt patent clearly embodies portions of claim 6 of the '074 patent, depicting a joint cover assembly for covering a gap between two floor elements, with a foot configured to be positioned within the gap and connected to a securing element, and a first and second member generally perpendicular to the foot and having a generally planar undersurface. Figure 1(a) of the Kornfalt patent depicts an enactment essentially identical to the basic T-molding which forms part of the molding system embodied in the '074 patent.

The issue on reexamination, however, is whether the Kornfalt patent goes on to show a modular assembly, allowing different elements to be added to the basic T-molding to form different molding profiles, allowing one product to generate moldings to transition between different flooring situations. Figure 2 of the Kornfalt patent clearly shows an altered T-shaped molding, wherein one arm of the T extends outward and down, allowing the molding to transition between two floors of different heights. Defendants argue that this altered T-shaped molding is formed by attaching a second molding element to the first through a tongue-and-groove attachment, and that Kornfalt therefore shows

an enactment that would render claim 6 of the '074 patent obvious to one of ordinary skill in the art. 35 U.S.C. § 103(a) provides that even if the invention sought to be protected under the '074 patent is not identical to the prior art depicted in Kornfalt, the '074 patent is nonetheless invalid "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

The Federal Circuit has held that "[v]alidity challenges during preliminary injunction proceedings can be successful, that is, they may raise substantial questions of invalidity, on evidence that would not suffice to support a judgment of invalidity at trial." *Amazon.com*, 239 F.3d at 1358. In *Helifix Limited v. Blok–Lok Ltd.*, 208 F.3d 1339 (Fed.Cir.2000), the court considered on appeal the decision of the district court denying plaintiff's motion for preliminary injunction and granting summary judgment in favor of the allegedly infringing defendants. The district court's decision was based on its assessment of validity, and its finding that plaintiff's patent was invalid because it was anticipated by a publication of prior art. *See* 35 U.S.C. § 102(b).[2] The Federal Circuit reversed the grant of summary judgment, finding that defendant had not produced "any evidence indicating that a person of ordinary skill in the art could have made or obtained a tool capable of being used in the claimed method without an undue amount of experimentation." *Helifix*, 208 F.3d at 1348.

---

**2.** 35 U.S.C. 102(b) states in pertinent part that "[a] person shall be entitled to a patent unless (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States".

The Federal Circuit affirmed the denial of preliminary injunction, however, finding that plaintiff admitted that certain of the claims contained in its patent were present in the prior art publication, and that the publication and other evidence made it a "very open question" whether the remaining claims were present in the prior publication. *Id.* at 1351. The court concluded that "although the record before us does not support the district court's grant of summary judgment, it does raise a substantial question of patent invalidity" sufficient to defeat the motion for preliminary injunction.

Defendants assert, and plaintiffs have presented no evidence to refute, that at least some of the elements of claim 6 of the '074 patent are present in Kornfalt. Figure 1(a) of Kornfalt does depict, as set forth in claim 6 of the '074 patent, a joint cover assembly for covering a gap between two floor elements, the floor elements for covering a sub-surface (preamble), comprising: a foot configured to be positioned within the gap (which the court designates as element 1); a first member generally perpendicular to the foot (element 2); a second member extending generally perpendicular to the foot (element 3), at least one of the first and second members having a generally planar undersurface (element 4); and a securing element, to connect the molding to the sub-surface and to be positioned within the gap (element). This court finds that these elements of claim 6 of the '074 patent are found in Kornfalt. This court also finds that the final element of claim 6, wherein the foot engages the securing element in order to retain the molding over the gap when the assembly is in an installed condition, is also present in Kornfalt.

The question, then is whether the remaining elements of the '074 patent, disclosing an attachment to be positioned between one of the first and second members and a floor element (element 6), wherein the attachment and the under surface of one of the first member engage through a tongue-and-groove joint (element 7), wherein the groove is in the shape of a large base distal the under surface of a respective member (element 8), are likewise present in Kornfalt. The court finds this to be a substantial question, calling into some doubt the validity of the '074 patent. The court does not conclude, as plaintiffs argue is necessary, that defendants have shown by clear and convincing evidence that the '074 patent is invalid. However, taking into account the materials and argument presented by both parties through written briefing and at hearing, this court concludes that plaintiffs have not met their burden of showing a likelihood of success on the merits, on the issue of whether their claim of infringement as to claim 6 of the '074 patent will survive the invalidity challenge raised by defendants. *See Genentech,* 108 F.3d at 1364.

Defendants likewise argue that claim 12 of the '074 patent is invalid, because each and every element of claim 12 is disclosed in the earlier Sondermann patent, such that the Sondermann patent anticipates claim 12 of the '074 patent. *See Helifix,* 208 F.3d at 1347 (holding that a prior art reference is anticipatory if it discloses each and every limitation of the claimed invention and must describe the claimed invention sufficiently to place it in the possession of a person of ordinary skill in the field of the invention). Like claim 6, claims 12 of the '074 patent discloses a multi-part molding assembly, wherein the assembled molding unit attaches to a securing foot located in a gap between flooring elements.

The primary difference in claims 6 and 12 is that claim 12 sets forth that the foot of the molding has a groove in its side-

wall[3], and that the attachment comprises "a protrusion sized and shaped to fit in said groove in said foot." In other words, while claim 6 discloses that the attachment joins to the main molding through a tongue-and-groove joint between the underside of the first or second member and the attachment, claim 12 discloses that the two elements join through a groove-and-protrusion joint, with the groove in the sidewall of the foot. Defendants point out that Figure 3 of Sondermann shows the joint cover molding joined to an attachment through a series of V-shaped groove-and-protrusion joints, wherein the attachment is sized and shaped to fit in the grooves in the foot.

As with claim 6, this court finds that the preliminary elements of claim 12 are clearly depicted by figure 3 of Sondermann. Specifically, the undersigned finds that figure 3 of Sondermann depicts an assembly comprising a molding comprising a foot (element 1), a first member generally perpendicular to the foot (element 2); a second member extending generally perpendicular to the foot (element 3), at least one of the first member and the second member having a generally planar under surface (element 4); a securing element, connecting the first molding element to the subsurface and positioned within the gap (element 6); wherein said foot engages the securing element in order to retain the molding over the gap when the assembly is in an installed condition (element 8).

This court also finds that defendants have raised a substantial question as to whether the remaining elements of claim 12 of the '074 patent are also depicted by Sondermann. Although the enactment of claim 12 as embodied in plaintiffs' Four-in–One product is very different from the molding assembly depicted in Figure 3 of Sondermann, the test is not to compare final products, but to determine if the claimed limitations of plaintiffs' patent are present in a prior art reference. As with claim 6, this court finds that defendants' argument that all elements of claim 12 are present in the prior art reference has sufficient merit to raise a substantial question as to the validity of claim 12 of the '074 patent. Therefore, as plaintiffs have failed to carry their burden of showing a likelihood of success on the merits, the preliminary injunction should not issue.

### B. Irreparable harm

Although the conclusion that plaintiffs have failed to carry their burden of showing a likelihood of success on the merits is sufficient to support denial of plaintiffs' motion for a preliminary injunction, *see Amazon.com*, 239 F.3d at 1350 ("[A] movant cannot be granted a preliminary injunction unless it establishes *both* of the first two factors, *i.e.*, likelihood of success on the merits and irreparable harm."), this court concludes that plaintiffs have also failed to establish the second essential factor of irreparable harm.

A plaintiff who makes out a strong showing of likelihood of success on the merits, coupled with continuing infringement of patent rights, is entitled to a presumption of irreparable harm. *See Reebok International Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed.Cir.1994). The presumption, which is rebuttable, serves "as a procedural device which shifts the ultimate burden on the question of irreparable harm onto the alleged infringer." *Id.* When, as here, however, plaintiffs have not made out a strong showing of likelihood of success on the merits, the presumption does not arise and plaintiffs bear the burden of showing that irreparable harm will occur in the absence of an

---

**3.** Specifically, the claim element states "said foot defining a groove in a sidewall thereof."

injunction. This court finds that plaintiffs have failed to do so.

■ Plaintiffs have raised a number of arguments in support of their contention that Pergo will suffer irreparable harm if a preliminary injunction does not issue. Although these arguments involve a number of interrelated factors and are thus difficult to address in a separate and discrete fashion, plaintiffs' arguments in essence boil down to three major groups. First, plaintiffs argue that defendants' allegedly infringing product is costing plaintiffs in terms of lost sales and market share. Second, plaintiffs contend that defendants' actions have cost and continue to cost plaintiffs in terms of good will among retailers, consumers, and the public. Finally, plaintiffs argue that defendants are causing harm to plaintiffs' reputation as an innovator in the field of laminate flooring products. The undersigned will address each of plaintiffs' contentions in turn.

### (1) Loss of market share

Plaintiffs argue that because the principal value of a patent is the statutory right to exclude, the loss of market share meant to be protected by patent rights itself constitutes irreparable harm. Plaintiffs further argue that the loss of market position is particularly irreparable when the patentee has expended substantial resources to develop the market. It is true that the Federal Circuit has held that "because the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole." *Hybritech*, 849 F.2d at 1456–57. The Federal Circuit has nonetheless also held "there is no presumption that money damages will be inadequate in connection with a motion for an injunction pendente lite." *Nutrition 21*, 930 F.2d at 872. The Federal Circuit has also rejected the argument that loss of the statutory right to exclude, in and of itself, is sufficient to support a finding of irreparable harm. *See Illinois Tool Works, Inc., v. Grip–Pak, Inc.,* 906 F.2d 679, 683 ("Application of a concept that every patentee is always irreparably harmed by an alleged infringer's pretrial sales would... disserve the patent system.")

In terms of lost sales, the parties have introduced evidence that Pergo's Four–in–One transition molding system and Faus' FasTrim product are sold primarily through three major avenues: the Home Depot and Lowes home-improvement centers, smaller specialty retail outlets, and special order. Pergo sells through the Lowes chain, as well as through the smaller specialty outlets and special order (including special order through the Home Depot chain). Defendants import and sell their product in the United States exclusively through the Home Depot. Thus, the only venue of lost sales to which plaintiffs can point are sales of the FasTrim product through the Home Depot chain. The parties have presented conflicting evidence as to whether the Home Depot chain of stores would choose to carry plaintiffs' product even in the absence of defendants' competing product. Even assuming *arguendo,* however, that plaintiffs' are correct and all of defendants' sales through its single marketing outlet would have inured to plaintiffs, this court finds that such lost sales could readily be calculated as damages, rather than supporting a finding of irreparable harm.

Plaintiffs attempt to argue, in support of the proposition that their lost sales are not capable of easy calculation, that defendants' sales of their transitional molding system might also be costing plaintiffs' in terms of sales of laminate flooring. Plaintiffs point out that both defendants' and plaintiffs' molding products are designed

and manufactured to match or complement their respective flooring products. Plaintiffs argue that "[b]y diverting sales of the Pergo Simple Solutions ™ Four–in–One molding product to the FasTrim product, customers may at the same time be diverted away from other Pergo brand flooring to non-Pergo brand flooring which matches the decor of the FasTrim product." Brief (DE # 10) at 18. This court finds no basis to support plaintiffs' speculative assertion that consumers will make the major purchasing decision of flooring design and decor based on the design and decor of trim molding.

(2) Loss of goodwill

In a similar argument to that of lost sales, plaintiffs argue that because they, unlike defendants, have to recoup research and development costs, defendants can afford to undercut prices on their FasTrim product. Plaintiffs assert that Faus stands ready to drive Pergo from the market. Aside from this immediate danger of lost sales and Faus' potential domination of the transition molding market, plaintiffs assert that intangible damage will result when consumers, once infringing products are removed from the market, are reluctantly forced to pay the higher prices that Pergo must charge in order to recoup their investment in their Four–in–One product. Plaintiffs also note that once a competitor has developed a distribution channel and a relationship with a given retail outlet for a given product, it is difficult to compete for that outlet's business.

The undersigned finds that plaintiffs' concerns are not clearly supported by the evidence. First, as noted above, plaintiffs are the sole presence selling multi-configuration transitional molding in two of the three outlets for such sales. Defendants do not sell their allegedly infringing product through specialty retail outlets or special order. While plaintiffs and defendants are sharply in competition in the do-it-yourself center market, plaintiffs' contention of irreparable harm is supported only if, in the absence of defendants' product, both the Home Depot and Lowes chains would choose to market plaintiffs' product. As previously noted, the evidence to support such a proposition is conflicted, at best. In particular, defendants have presented evidence to show that Home Depot was given the opportunity to market plaintiffs' Four–in–One product prior to the availability of defendants' FasTrim product, and that Home Depot declined to purchase plaintiffs' product for sale in its stores. *See* Declaration of Daniel Snapper at 6. Therefore, plaintiffs' concerns that loss of goodwill and difficulties establishing a market with Home Depot amount to irreparable harm caused by defendants' product do not appear to be supported by the evidence. Similarly, plaintiffs have failed to show that consumers who are currently purchasing through Home Depot would, in the absence of Faus' product, seek to purchase plaintiffs' product through other channels and be angered by any price difference. In short, plaintiffs' argument that defendants are causing a loss of goodwill between plaintiffs and the marketplace is not sufficiently supported to warrant a finding of irreparable harm.

(3) Harm to reputation

Finally, plaintiffs argue that they have suffered irreparable harm because defendants marketing and distribution of their allegedly infringing product has caused damage to Pergo's reputation as an innovator in the field of multi-transitional floor molding. Plaintiffs point to a press release put out by defendants subsequent to the release of the FasTrim product in which they claimed that Faus was "the leader in design and technology innovation" and that they had "done it again."

Plaintiffs argue that such statements are materially false and cause irreparable harm to Pergo's reputation. Mark Peterson, a damages expert retained by Pergo, declared that "[w]hile difficult to quantify, if Pergo is not seen as the sole innovator of multi-transitional molding, there may be a reduction in Pergo's profits." Reply Brief at 8.

The court finds this opinion to be speculative and not supported by the evidence. There is no evidence in the record before the court to support a finding that Pergo has suffered or will suffer in the future any economic or non-economic harm because Pergo is not seen as the undisputed innovator in this field. For that matter, given the undisputed evidence in the record that Pergo's Simple Solutions Four-in–One product was developed and marketed prior to Faus' FasTrim product, there is no evidence that Pergo is not viewed in the marketplace as the pioneer in the field of multi-configuration transition molding.

This court notes that the Federal Circuit has held that "[h]arm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money." *Reebok*, 32 F.3d at 1558. This is not the form of harm to reputation alleged by plaintiffs, however, as there is no evidence submitted by plaintiffs that defendants' product, whether or not it is infringing, is inferior to plaintiffs' system.

This court also finds that plaintiffs have not alleged, in their briefing or hearing, that in the event that plaintiffs ultimately prevail at trial in proving their claims of patent and copyright infringement, that defendants would be unable to respond in damages. As noted above, although the nature of the patent grant weighs against a finding that monetary damages will al-

ways suffice to make a patent holder whole, the "availability of damages is particularly significant when, as here, the patentee can point to no specific interest that needs protection through interim equitable relief." *High Tech Medical Instrumentation*, 49 F.3d at 1557.

Therefore, this court concludes that plaintiffs have failed to carry their burden that they have suffered irreparable harm, as necessary to justify the imposition of the extraordinary relief of a preliminary injunction. Because this court has similarly concluded that plaintiffs have failed to carry their burden of showing a likelihood of success on the merits, because they have failed to show that defendants' challenge to the validity of the '074 patent lacks substantial merit, the undersigned declines to undertake further analysis on the factors of balance of hardship and public interest in the issuance or refusal of a preliminary injunction. *See Polymer Technologies, Inc. v. Bridwell*, 103 F.3d 970, 973–74 (Fed.Cir.1996) ("[A] trial court need not make findings concerning the third and fourth factors if the moving party fails to establish either of the first two factors.")

## CONCLUSION

For the above stated findings of fact and conclusions of law, plaintiffs' motion for a preliminary injunction is DENIED.